Good morning, Your Honors. May it please the Court. Naithra Rahman for Plaintiff Appellant Terry McGuire-Mollica. With this Court's permission, I'd like to reserve three minutes for rebuttal. For nearly four years, BOP officials denied Ms. McGuire-Mollica necessary surgery to treat a uterine tumor, resulting in that tumor going to 15 pounds, among other extremely painful complications. The only question before this Court is whether Ms. McGuire-Mollica can proceed to have the merits of her very serious medical claim heard. There are three different ways of viewing the PLRA exhaustion issue in this case, but regardless of how this Court looks at it, Ms. McGuire-Mollica satisfied the PLRA's requirements. The most straightforward way for this Court to decide the case is to hold that Ms. McGuire-Mollica exhausted administrative remedies because she submitted her final appeal to the General Counsel as required under Section 542.15a, and because her grievance was not logged in the BOP's internal system, she was not required to take any other steps before filing suit. In the alternative, if completing every affirmative obligation the regulations required did not amount to exhaustion, then the regulations were prohibitively opaque, as they provided her no guidance regarding what to do. If she did exhaust in the sense that, you know, by sending it in, even though it wasn't logged, that she took those steps, how do you address the fact that her lawsuit was filed before the period of exhaustion would have ended? Does that make sense? Am I understanding that question right? The regulations give the prison a certain amount of time to rule on her claim, but she went ahead and filed before that time expired. How do we address that? Yes, Your Honor. So, Section 542.18 is very clear about what triggers that 40-day response period, and here it plainly wasn't triggered. It is defined by the prison officials. Yes, it's the logging. They did not do that here. So, your position is because they never did that, that deadline never got triggered. That's exactly right, Your Honor. Does that mean there's no decision? Yes, Your Honor, but the BOP's regulations do not require Ms. Maguire-Malika to wait for a decision. They require her to submit her final appeal. Well, that's true, they do require her to submit their final appeal, but to exhaust, you actually have to get a decision. I mean, the law is clear on that. In other words, you have to go through all four steps, and if one of those completions that has to get a decision, how has there been exhaustion? I don't think the BOP's regulations say, Your Honor. You may be right about that. I'm talking about law. Exhaustion requires, as a matter of law, that you have got a decision from each of those steps. Now, there may be, where I'm it seems to me, at least, with the question that the Chief just asked you and your answer there, and I think those are both right, if there isn't a decision, then nothing has happened yet. There still, to this day, is not a decision. So how could there be, possibly be, exhaustion at least at completion of the four steps? Yes, Your Honor. So, one, the Supreme Court has made clear that it's the prison's requirements and not the PLRA that define the boundaries of proper exhaustion. So here, Ms. Maguire-Malika's requirement was to, or her burden, was to complete every single step of the requirements. And the district court found that she did them all. And so, in this situation, where BOP is writing its own regulations, it is deciding what exhaustion is. It did not say that, but of course, yes. It is clear that they don't have to give a decision to you. That is the regulation saying, until it's filed. And the district court found that there was no filing. And you agree there was no filing. Then, how did they meet the regulations in getting a decision? Where was the requirement to ever decide what was submitted? Your Honor, one thing I'll say is that this Court's case law, a final disposition on the merits, is not required for a prisoner to exhaust administrative remedies. Well, I agree it has a default provision, but that default provision is only triggered at filing. And so, the filing never happened. The 40 days never started. And we don't have a decision. Let me ask this. Assume I'm right about all of that. You then make an alternative argument. You mentioned it a little bit, but I want to talk about one that you didn't mention but is in your brief. And that is the unavailability part. Because the way around it is, if the because of this seeming gap between submission and filing from there, then, or activities of the BOP to get something filed, then that is a way around it. And here, your client, in the response to the motion to dismiss, specifically said that the mail was being tampered with, which goes some way to explain why the mailing that was put in the mailbox didn't actually end up getting filed. Was there any findings by the district court with regard to that? No, Your Honor. The district court did not make any specific factual findings about the mail tampering. But I think this Court's case law is clear that a breakdown in the grievance process can constitute, can make remedies unavailable. And here, there was clearly a breakdown in the grievance process based on the district court's two factual findings, that Ms. Maguire-Malika submitted her final appeal and that it was never logged and filed. Would a district court have to make those findings? In other words, even assuming that there was no exhaustion here, is there not a requirement where unavailability is alleged to then, at step one, at step two, make some findings regarding the unavailability arguments that are raised? I don't think your, this Court certainly could remand for further fact finding, but I don't think that's necessary here because a breakdown in the grievance process clearly happened. If we look at Demanche v. Brown, this Court held that a prisoner who submitted his grievance, it was erroneously rejected. In that case, this Court held that there was a breakdown in the remedies. And so... So, it's an affirmative defense, right? Failure to exhaust. Yes, Your Honor. And what is required of the prisoner is to use the program in good faith and in an honest, straightforward manner. And we have findings by the district court that the prisoner did everything required to do, submitted the final appeal, completed it, which takes it, to me, totally outside of shivers. And the filing part of it, that Judge Loke has referred to, under the regulations, I've read the prisoner, the BOP regulations, and the regulations say that's not something your client does. That's something the prison officials did. That's exactly right, Your Honor. Your client did everything required to exhaust. Isn't that right? That's right, Your Honor. And I think the Seventh Circuit's decision, in Dole v. Chandler, is instructive on that point, because in the, in Dole, the Seventh Circuit recognized that a prisoner who completed all of his affirmative requirements under the regulations exhausted administrative remedies. Let's take that to its logical conclusion. Under that view, the moment that your client put it in the mailbox, they can automatically sue? So, Your Honor, in the vast majority of situations, a prisoner's grievance would ultimately be logged and filed. In which case, the prison who controlled this process, and wrote the regulations, and didn't write the protocol provision in this circumstance, but the prison could come forward, and when they assert their affirmative defense, and say, oh no, Your Honor, it got filed two days later, and we're within the 40-day period, right? Completely, yeah. Yes, exactly. Are we still within the 40-day period now, do you think? The prison? Yes. I thought your position was that it never got triggered in the first place, because it never got filed, at least based on this record. It never got filed by the prison officials, and it was their responsibility under their own regs. Yes, yes, Your Honor. So, your position is that it never got filed. I guess my point is, could the prison say, oh, here it is, it's filed now, so we've got 40 days to resolve it, so you didn't exhaust this, you know, judge dismissed this, because it was filed too early. Could they do that? I don't think so, Your Honor, because in the majority... I guess I'm trying to figure out, why can't they just do that? Well, I think the vast majority of circuits have recognized that a lack of response for an extended period of time renders remedies unavailable. And so, since it's been five... That's the key, meaning it's not the exhaustion part, it's the unavailability part for which... In other words, I think I'm agreeing with you, but what you just said is not that there is exhaustion, Judge Brasher. What you're saying is, in reality, if that's the case, this whole thing's unavailable. It's a sham, right? Yes, Your Honor. I mean, I think that the fact that there's no... Such an extended period of time within which... I mean, it's been five years, Ms. McLarmelink has been grieving her medical need for so long. The fact that the grievance could be logged and filed, and then the 40-day time period would be triggered would, of course, mean that she had not exhausted the administrative remedy process, but yes. But I agree that the alternative remedies are clearly unavailable here because, of course, after such an extended period of time, if the prisoner were to show the grievance and log and file it, no response from the prison for five years would clearly have rendered remedies unavailable. And I'd also like to speak briefly on the opacity argument we put forth as well. Yes, we did, Your Honor. Sort of opacity of preservation. Yeah, so in document 52 at page 6, Ms. McLarmelink stated that she had done all administrative remedies that were available to her and that no place within the administrative remedy guidelines stated that a prisoner must wait on a response from one level before proceeding to the next level, and especially because she was a prisoner filing suit pro se. I've read the same portion. I have it right in front of me. That seems to be an argument for why she, in fact, exhausted, meaning I did everything you asked me to do, and I don't control the mail, that's the next sentence there, and that doesn't tell me that I need to wait for anything that's there. In other words, she's saying that I've exhausted. That's not an availability argument, though, is it? That's not, I haven't exhausted, but what you have there is so unavailable because there's this gap between submission and filing that somehow has never been corrected in the history of BOP administrative regulations. Well, our position, Your Honor, is that the, she exhausted argument is sort of the flip side of the opacity argument because if completing all of the requirements under BOP's regulations was not sufficient for her to exhaust, then the... She doesn't give her any guidance as to what more she can do. Exactly, and so because of that, the regulations were prohibitively opaque. The Second Circuit's decision in Williams v. Correctional Officer Briatno is instructive on this point where the Second Circuit recognized that the prisoner had no guidance regarding how to appeal a grievance that was properly submitted but never filed by the prison, and that same logic applies here. Ms. Maguire-Malika had no guidance regarding how to proceed when her grievance was properly submitted, as the district court found, but never logged and filed by the BOP. If there are no further questions, sorry. We're adjourned for today, so I'll pass it over to the Commissioner. Thank you, Your Honors. Good morning, Your Honors. Don Long appearing on behalf of Appellees. I'd like to just begin by pushing back a little bit in my opposing counsel's framing of this case, and this is not in any way to diminish the sympathy... Can you start with the framing, please? Of course, Your Honor. I figured that may be a weaker point based on your prior questions. Well, I mean, am I understating them? So, I do not disagree with the reading that the deadlines, as triggered by the BOP's period to respond, are triggered upon filing. Well, it's not my responsibility who does what under those regulations. There are certain things the prisoner does, there are certain things the officials do, and I just read them, and it seems to me this prisoner did everything required. And the failure to file at the last step after she submitted it and completed it, according to the District Court, we're bound by that. We're stuck with that. She submitted it. She completed it. Takes that out of Shivers, it seems to me. District Court, I think, was wrong to assume that Shivers controlled the inquiry. What happens next is your client's responsibility, and the fact that it didn't get done can't be her fault. And, Your Honor, I wouldn't argue that what was her fault that it got failed to be logged into Sentry or that it was never received by the General Counsel. Our argument would be that once she put it in the prison mailbox to be mailed, she had to wait at least 40 days before filing the District Court action. The regs say that the 40 days are triggered by the filing, and the filing is something your clients do, and the fact that it hasn't happened is because they didn't do it, not because she didn't do it. Understood, Your Honor. And if it doesn't even start to run, then where are we? It seems to me we're in one of two situations. Either she has exhausted, because she's done everything required of her, or we're in Judge Lutz's scenario where this is an unavailable procedure to her. And, Your Honor, my best argument on that point, and whether ultimately you find it persuasive, is the Supreme Court, in the context of construing prison regulations, has said that Congress has indicated that prisoners should favor, where there are reasonable interpretations, and I think reasonable, there may be a disagreement here, but where there are reasonable interpretations, prisoners should favor the interpretation that requires them to exhaust. And so here, the interpretation I would ask the Court is to say that under the regulations, she has to wait at least 40 days from the date that she places it in the mail, because... That's my reading of the regs, is that she doesn't have to do that, because you never filed it. And one of the... She can see whether it gets filed or not, as I understand how the system works. But your client had a simple solution. And if you assert, you know, your client asserts an affirmative defense of failure to exhaust, and it's obvious the breakdown is your client not filing her final appeal, and starting the 40-day period. And, Your Honor, I may be accused of being pedantic in the way I respond, and I apologize. My clients, in this case, are the individuals, not representing BOP. My actual defendants, in this case, have no control over that either. I get that. But the prison, so the... Can I ask you, so it seems to me like your position is, on the exhaustion issue, that, okay, so she did everything that she could by filing, by, you know, mailing the thing in. If we count that as exhaustion, we also have to count the 40 days, right? Because we're sort of presuming that it was received, and that she had done everything she could, and needed 40 days to respond to it. Is that, that's your argument, right? That she needed to wait 40 days. Because we're presuming under this sort of like, if we get to that point, we're doing under this sort of like counterfactual, theoretical idea that she did exhaust, that she was going through the process when she just mailed it in. So that's why the 40 days comes in? Yes, and whether the regulations do this effectively. I think one fundamental issue that the regulations have to address, it's a general counsel's office that's located in D.C. The prisoner is located wherever the prisoner is. The prisoner will place it in the mailbox to be mailed there. There's obviously going to be some built-in time delay. Appellant's readings of the regulations would say that the prisoner may bring suit in district court once it is not received by the general counsel's office. When the date at which it will not be received by the general counsel's office is, at least in my view, fairly unknowable. So the prisoner could file suit the day after, the day of, maybe it's lost, or four days. Wait here, 26 days. Can I ask you, so all of that presumes that the thing that we should care about is whether the claim was exhausted at the moment the suit was filed. And one of the arguments that the other side makes is that we really shouldn't be caring about that. We should be caring about whether the claim was exhausted at the time when you moved to dismiss for lack of exhaustion in the course of the litigation. And you moved to dismiss for lack of exhaustion like two years later or something like that. So why can't we say something like, look, who cares when the claim was filed? It's been 40 days now, and so you had your 40 days. So it was effectively denied by the time we are here now, many years later. And I guess I understood their argument as a little bit different in the sense, when we moved to dismiss, they had amended their complaint. Okay, and my response to that would be, Harris and Miller are persuasive on the point that when you are interpreting the PLRA, you look at the status when the action was brought. The cases they cite are out-of-circuit authority, both of which rely on, within that circuit, cases that reach the opposite result of Harris. And so to me, their argument is against the direction of travel of prior panel opinions on this. It doesn't have to do with the text of the PLRA. I mean, it says no action shall be brought until such administrative remedies are available or exhausted. In other words, the reason we look at the time of the suit is because you can't bring suit until it's exhausted, right? Yes, I would agree with that. But I think the courts... Your point is that our precedent has settled that to the extent that there's another interpretation of how to read that language. Yes. Well, you didn't say settled. You just said suggested that was the right one. I mean, I would not say that this court is bound, like that Harris is on all fours on this issue. I think it is highly persuasive and suggestive. Let me just push back on that a little bit. Let's just assume it's an open question. I guess we've said that failure to exhaust does not count as a strike, right? And we've said that you just get it dismissed without prejudice, so you can just refile it again. What is the practical point of litigating two years after the fact, whether we should dismiss something that then could be immediately refiled? This was correct. Didn't exhaust it because you had 40 days, then she could literally turn around and file exactly the same lawsuit the next day and it would be exhausted. My answer to your specific question would be that it serves the larger institutional purpose of ensuring strict compliance with the PLRA, even in the one instance that would result in additional suit. And I think more generally would be the counterfactual of a case where a prisoner files suit the same day they file their BP-9. They go through all the administrative process. The prisoner has 90 days to serve the complaint. The United States or Bivens defendants has 60 days to respond. The problem is that the prisons are the ones who control the process and can write the regs. And they can also write the regs in a way that accounts for that very scenario, but they haven't. Understood, Your Honor. So let's assume for the moment that your reading is the reasonable one that we need to take about the 40 days and when it's triggered. That gets us to the unavailability question. And while I question whether the opacity argument was preserved, I don't think there's any question that a thwarting argument was in fact preserved below. And I can read to you, but it's page seven of the same docket entry that your opposing counsel read from. And specifically in a note, it's even said like, note in all caps bracketed off separately, that it should be noted that on her, meaning the plaintiff's original Bivens complaint, plaintiff alleged that the mail office staff at the FCI, SPC, Aliceville were tampering with plaintiffs and others incoming and outgoing mail. Was the district court not at the point in which found exhaustion here not required to determine, make some either step one or step two determination regarding unavailability? If the court agrees with them that it was properly raised before, then the district court... I was speaking for myself. If it was raised before that, it was properly raised. Then the district court should have addressed it. And I, specifically on the issue of that, I would at least call that under the thwarted Ross category. I think the finding of facts would be required by the district court at this point on that issue. I think that might be the right solution, frankly. And just going, again, I offered this at the beginning and it was rejected, so maybe the court has no interest. But to go back to their framing, that I'm not trying to diminish the allegations in this case and that the point of this appeal is to allow her to get to the merits of the case. In practical reality, at least in my view, this case will never reach the merits. It's foreclosed by this court's decision in Johnson v. Terry. I think it's fine if we do happen to remand if the district court on its own decides, I choose not to decide the failure to exhaust issue and have it evidence your hearing. On this side show, I'm just going to decide whether there's a failure to state a claim here. I think that's up to the district court to decide whether to do that or not. And our only ask would be if the court remands with specific instructions for the district court on how to proceed, particularly in regards to opacity, that the parties also be allowed to brief this Johnson v. Terry issue. I think the district court is perfectly capable of making that call on its own. Thank you. I mean, ordinarily when we remand, we don't tell the district court. We don't send it back with a pretrial order. Understood, Your Honor. I'm a district court attorney. I don't appeal before the court of appeals much. If the court has no other questions, I would just thank you for this opportunity. This is my first argument before this court, so I appreciate it. Thank you, Mr. Long. And we appreciate your candor. Thank you. Ms. Raman. Your Honor, the... Bring the candor. The plain text of the BOP's regulations decide the question before this court, but I'd like to make a few quick points on rebuttal. One, as discussed during argument, a prisoner could not generally file suit immediately after they submit their form BP-11 because their case would be dismissed for a failure to exhaust because if the defendants show that their grievance was ultimately logged and filed. And secondly, with regards to thwarting, of course, it's... Sorry, just to push back on that. So I agree with you on day one that would be the case. I just don't understand why that would not be the case on day 27. So you just said, you answered the hypothetical I asked. Sent it here. Filed and put it in the mailbox. Immediately right after that, put it in the mailbox to go to the district court. Magically, that mailing makes it, but the other one didn't. But it's not a lawsuit file. It would be dismissed for failure to exhaust, right? You just said that, and I agree with you. In the vast majority of cases where a grievance was ultimately logged and filed, yes. Oh, okay. And that's a dismissal without prejudice. Right. It can come back. Yes. The prison's control. Yes, yes, definitely. If that was 27 days afterwards. I think the difference, Your Honor, is that in Ms. McGuire-Malika's case, her grievance wasn't logged and filed. But in most cases, it would be logged and filed. And at least, as Judge Brasher pointed out, nothing's been done yet. So we don't know if the 40 days are started. The prison truly can at any time say, we have now logged it. We have now rejected it. Here is your rejection letter. We don't know. It hasn't happened yet. And so I guess that's kind of the point. Now, it may be that there's a reason why it hasn't happened because the process is unavailable and opaque. But if it hasn't happened, if the hypothetical in day one is that it would be dismissed for failure to exhaust without prejudice, I just don't see how that would be any different on day 27. I think the difference, Your Honor, would be that under the BOP's regulations, a prisoner is required to receive some notice when their grievance is received. That's in section 542.11. If it is accepted. But in the vast majority of cases, a prisoner is going to get that receipt. It's just in Ms. Maguire-Malika's narrow case where she did not receive a receipt. She did not receive confirmation from her mail carrier that her BP-11 was ultimately delivered. And Ms. Maguire-Malika was not required to read into BOP's regulations that there was some requirement to wait for a decision. And the exhaustion is a burden of defense. Yes. Yes, Your Honor. And once you have a burden of establishing it for the defendants, Yes, Your Honor. and they need to be able to come in and say, oh, no, no. You know, this is what happened. And if at most all we have is that you did everything you were required and nothing happened afterwards, I don't know how they established their affirmative defense. Yes, Your Honor. We agree. And if this court has no other questions, we respectfully ask that the decision below be reversed. Thank you. Thank you. We are in recess until tomorrow. All rise.